## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KRIS CHAPTER JACKSON,

                **Plaintiff,**

v.

**SOAVE AUTOMOTIVE GROUP, INC.,**
**et al.,**

                **Defendants.**

**Case No: 2:23-cv-02403-DDC-TJJ**

## MEMORANDUM AND ORDER

Plaintiff Kris Chapter Jackson, proceeding *pro se*, filed two motions requesting the Court disqualify Defendants' attorneys and law firm (ECF Nos. 142 and 143). Plaintiff argues the attorneys are necessary witnesses for trial and should be disqualified under the lawyer-witness rule in Kansas Rule of Professional Conduct ("KRPC") 3.7, and the conflict-of-interest rule in KRPC 1.7. Plaintiff has also filed related motions to strike and for sanctions (ECF Nos. 147, 163, and 173), a motion to file audio recording exhibits (ECF No. 146), and a motion to appoint counsel (ECF No. 173). As explained in further detail below, Plaintiff's motions are denied. Plaintiff has failed to meet the legal standards necessary to disqualify Defendants' counsel under KRPC 3.7 and 1.7. Plaintiff's speculative allegations fall well short of demonstrating that defense counsel's testimony is necessary or that any conflict of interest exists. Plaintiff's motions to strike and motion to file audio recording exhibits are unsupported, and there is no legal basis for the appointment of counsel at this time.

### I.    Factual and Procedural Background

#### A.    Underlying Vehicle Purchase Transaction

This case arises from the purchase of a used 2015 Porsche Cayenne S (the "Vehicle") by Plaintiff and Michael Russaw on December 4, 2018, from Aristocrat Motors, a dealer of luxury

cars in Johnson County, Kansas (the "Dealership").[1] The loan was financed by Chrysler Capital and later assigned to Defendant Santander Consumer USA Inc. ("Santander").[2]

In early 2019, Plaintiff contacted the Dealership claiming she never received the Vehicle's registration paperwork and title. The Dealership attempted to secure a replacement title for the Vehicle by contacting the last registered owner of the Vehicle, Kraft Tool Company and its principal, Ronald G. Meyer, to obtain the necessary authorizations and power of attorney to secure a replacement title on their behalf. During that process, the paperwork forms were signed "Donald" instead of "Ronald" Meyer.

More than two years later, on August 4, 2021, Plaintiff contacted the Dealership stating she was rescinding the Vehicle purchase agreement based on "fraud, misrepresentation of facts, intentional deceit and consumer fraud." Plaintiff demanded a refund of her down payment for the Vehicle and all loan payments, service department costs, insurance, and fees.

On August 11, 2021, Plaintiff emailed several individuals at the Dealership and others placing them on notice of an alleged "fraudulent misrepresentation on the [Vehicle's] title." Plaintiff had discovered that the Dealership "applied for a duplicate title on August 5, 2021," and was inquiring about the "Donald" Meyer signature on the Vehicle's title, a Kansas Secure Power of Attorney, and a Johnson County Motor Vehicle Department Affidavit of Correction

---

[1] The "Dealership" herein means Defendant T.E.N. Investment, Inc. doing business as "Aristocrat Motors." Defendant Soave Automotive Group, Inc. ("Soave") is the parent company of Defendant T.E.N. Investment, Inc.

[2] Defendants state "Plaintiff incorrectly sued additional Defendant entity 'Chrysler Capital.' The correct entity name is 'Santander Consumer USA Inc.,' and 'Chrysler Capital' is merely a trade name." Defs.' Joint Mot. to Dismiss, ECF No. 72, at 1 n.2.

(collectively the "Title Replacement Documents").[3] Plaintiff alleged the Dealership employees forged Ronald Meyer's signature on the Title Replacement Documents and created a fake name of "Donald" Meyer on those documents. She then concluded the Dealership "did not have ownership or valid title or legal ownership to have sold the vehicle."[4]

During Plaintiff's August 13, 2021 email exchanges with Dealership employees, she learned the Dealership was represented by attorney Kevin Case. On August 13, 2021, Mr. Case with the law firm Case Linden, PC ("Law Firm") emailed Plaintiff advising he was legal counsel for the Dealership and instructed her to direct all further communications to him.[5]

### B.   Consumer Fraud Investigation

On August 6, 2021, Plaintiff filed a complaint against the Dealership with the Consumer Fraud Division of the Johnson County, Kansas District Attorney's Office, which initiated an investigation ("Consumer Fraud Investigation"). [6] On September 8, 2021, as part of that investigation, a subpoena duces tecum was served upon the Dealership (the "Investigation Subpoena") requesting, *inter alia*, "all documents (complete dealer's jacket), including all correspondence" between the Dealership and Plaintiff (and co-borrower) for the December 4, 2018 purchase of the Vehicle.[7]

---

[3]  Email, ECF No. 1-35, at 7–8; ECF Nos. 1-5; 1-6, and 1-7.

[4]  Email, ECF No. 1-35, at 7–8.

[5]  Email, ECF No. 150-2.

[6]  Consumer Fraud Compl. File No. DA21-261.

[7]  Response to Subpoena Duces Tecum Request No. 7, ECF No. 142-1, at 23.

On October 7, 2021, the Dealership, through its counsel, Mr. Case and his Law Firm, responded to the Investigation Subpoena and produced responsive documents, including the dealer's jacket.[8] The Consumer Fraud Investigation was later closed.[9]

### C.      Plaintiff's State Case

In January 2022, Plaintiff filed two cases in Johnson County, Kansas District Court (the "State Case") against the Dealership, its employees, and affiliated entities, which were later consolidated.[10] On August 24, 2023, Plaintiff filed two motions to disqualify defense counsel. One was based upon the lawyer-witness rule for Mr. Case's alleged participation in responding to the Investigation Subpoena. The second was based on his alleged concurrent conflicts of interest in representing all the defendants. After a hearing on September 20, 2023, the state court judge denied both Plaintiff's motions to disqualify counsel.[11]

### D.      Plaintiff's Federal Case

On January 12, 2022, two days after filing her State Case, Plaintiff filed a multi-count complaint in the United States District Court for the Western District of Missouri,[12] against the Dealership, its parent company Soave, five of its employees,[13] and Santander, the company

---

[8] *Id.* at 15–26.

[9] State Case Tr., ECF No. 161-1, at 19:12–13.

[10] *Jackson v. T.E.N. Investments Inc., et al*, Nos. 22-CV-00108 and No. 22-CV-228 (Johnson Co., Kan. Dist. Court).

[11] State Case Tr., ECF No. 161-1, at 17–39; State Court Journal Entry, ECF No. 162-2, at 2.

[12] *Jackson v. Soave Auto. Grp., Inc.,* No. 4:22-CV-00018-DGK, (W.D. Mo.).

[13] Defendants Marion Battaglia, Robert Hellweg, Angela Lewitzke, Stephanie Anne Turner, and Kayce Jones.

assigned the Vehicle loan. Plaintiff asserted claims under multiple theories, including violations of the Federal Odometer Act; RICO; the Magnusson-Moss Warranty Act; the Missouri Merchandising Practices Act; and the Truth in Lending Act.[14] Plaintiff also alleged Defendant Santander violated the Fair Debt Collection Practices Act, the FTC Holder Rule, and the Fair Credit Reporting Act.[15]   On June 3, 2022, Plaintiff filed her Second Amended Complaint (ECF No. 46), adding a tenth Count under the Telephone Consumer Protection Act against Santander.[16]

On September 7, 2023, the case was transferred to this Court.[17]   Attorney Jamie Welch entered an appearance in this case on October 24, 2023. On November 29, 2023, the case was stayed after an involuntary Chapter 7 bankruptcy petition was filed against Plaintiff. On July 3, 2024, the stay was lifted, and the case resumed. On August 20, 2024, Plaintiff filed the two motions to disqualify counsel at issue here. At Plaintiff's request, the Court held a telephone status conference on these motions on September 16, 2024. The Court ruled on some of Plaintiff's motions and advised Plaintiff that her motions to disqualify counsel would be denied by a separate Memorandum and Order.[18]   This Memorandum and Order explains why the motions are denied.

---

[14]  Federal Odometer Act (Count I); RICO (Counts III and IV); the Magnusson-Moss Warranty Act (Count V); the Missouri Merchandising Practices Act (Count VIII) ("MMPA"); and the Truth in Lending Act (Count IX) ("TILA").

[15]  Fair Debt Collection Practices Act (Count II) ("FDCPA"); the FTC Holder Rule (Count VI); and the Fair Credit Reporting Act (Count VII) ("FCRA").

[16]  Telephone Consumer Protection Act (Count X) ("TCPA").

[17]  *See* Order Transferring Case to the District of Kansas (ECF No. 85). *Jackson v. Soave Auto. Grp., Inc.,* No. 4:22-CV-00018-DGK, 2023 WL 5806145, at *3 (W.D. Mo. Sept. 7, 2023).

[18]  Order, ECF No. 182, at 2.

## II.    Standards Applicable to a *Pro Se* Litigant

The Court is mindful that Plaintiff is a *pro se* litigant in this case. "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[19] This means if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements.[20] This does not mean, however, the Court should assume the role of advocate for the *pro se* litigant.[21] Although held to a less stringent standard than a licensed attorney, the *pro se* litigant must nevertheless follow the same rules of procedure.[22]

## III.   Plaintiff's Motion to Disqualify Counsel Based Upon KRPC 3.7 (Lawyer-Witness Rule) (ECF No. 142)

In her first motion, Plaintiff requests the Court enter an order disqualifying Mr. Case, Ms. Welch, and the Law Firm. She argues Mr. Case actively participated in the Consumer Fraud Investigation of the Dealership, and thus is precluded by KRPC 3.7 from acting as an advocate at trial and from engaging in pretrial activity that may cause confusion to the jury at trial.

Defendants argue Plaintiff fails to establish any factual or legal basis supporting her request that would satisfy the three-prong test for disqualification under KRPC 3.7. They contend Plaintiff has not shown either attorney would be a material witness, the information these attorneys possess

---

[19] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[20] *Id.*

[21] *Id.*

[22] *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).

can only be obtained through these attorneys, and the testimony by these attorneys would be prejudicial or may be prejudicial to Defendants.

### A.   Legal Standard Applicable to Motions to Disqualify Counsel

Motions to disqualify counsel are governed by two sources of authority.[23] First, lawyers are bound by the local rules of the court in which they appear.[24] Federal district courts usually adopt the Rules of Professional Conduct of the states where they are situated. Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law.[25]

The District of Kansas has adopted the Kansas Rules of Professional Conduct as the "applicable standards of professional conduct" for lawyers appearing in this Court.[26] The court has the power to disqualify counsel at its discretion based upon these professional standards of ethics.[27] Because disqualification affects more than merely the lawyer in question, the court must satisfy itself that this blunt remedy serves the purposes behind the ethical rule in question.[28]

The court reviews motions to disqualify with "extreme caution because such motions can be misused as techniques of harassment."[29] The moving party has the burden of showing the

---

[23] *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994).

[24] *Id.*

[25] *Id.*

[26] D. Kan. Rule 83.6.1(a).

[27] *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 664 (D. Kan. 1998).

[28] *Id.*

[29] *Prince v. Kansas City Tree Care, LLC*, 660 F. Supp. 3d 1082, 1092 (D. Kan. 2023) (citing *Chapman Eng'rs, Inc. v. Natural Gas Sales Co.*, 766 F. Supp. 949, 954 (D. Kan. 1991)).

grounds for disqualification, and the proof must be more than mere speculation and must sustain a reasonable inference of a violation.[30] In deciding a motion to disqualify counsel, the court balances several competing considerations, including the privacy of the attorney-client relationship, the prerogative of a party to choose its own counsel, and the hardships that disqualification imposes on the parties and the entire judicial process.[31] "The right to counsel of choice is an important one subject to override for compelling reasons. Even so, this right is secondary in importance to preserving the integrity of the judicial process, maintaining the public confidence in the legal system and enforcing the ethical standards of professional conduct."[32] A motion to disqualify counsel deserves serious, conscientious, and conservative treatment.[33]

### B.  KRPC 3.7 – Lawyer-Witness Rule

Plaintiff bases her motion to disqualify counsel on KRPC 3.7, which provides:

> (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>     (1) the testimony relates to an uncontested issue;
>     (2) the testimony relates to the nature and value of legal services rendered in the case; or
>     (3) disqualification of the lawyer would work substantial hardship on the client.
> (b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.[34]

---

[30] *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1530–31 (D. Kan. 1992) (internal citations omitted).

[31] *Walker v. Newman Univ., Inc.*, No. 19-CV-2005-DDC-TJJ, 2019 WL 2268971, at *2 (D. Kan. May 28, 2019).

[32] *Id.* (quoting *Koch*, 798 F. Supp. at 1530 n.2.)

[33] *Id.*

[34] KRPC 3.7.

One of the strongest rationales for this lawyer-witness rule is to prevent jury confusion over the separate roles of an advocate and a witness.[35] Combining the roles of lawyer/advocate and witness can prejudice the opposing party because a jury may be unclear whether the lawyer asked to testify is making a statement that should be taken as proof or as an analysis of the proof.[36]

By its express terms, KRPC 3.7(a) is only a prohibition against the lawyer acting as an "advocate at a trial."[37] Its primary purpose is to avoid the possible confusion that might result from the jury observing a lawyer acting in dual capacities, i.e., as both a witness and advocate.[38] The jury is usually not privy to pretrial proceedings so the Rule typically does not disqualify the lawyer from performing pretrial activities such as participating in settlement negotiations and conferences, strategy sessions, pretrial hearings or conferences, or motions practice.[39] Disqualification from pretrial matters may be appropriate, however, where the pretrial activity "includes obtaining evidence which, if admitted at trial, would reveal the attorney's dual role."[40]

The parties in this case are still engaged in discovery and the jury trial date is over a year away. It would therefore be premature to address the issue of whether Defendants' counsel will be

---

[35] *See Schneider v. Citimortgage, Inc.*, No. 13-4094-SAC, 2014 WL 6632939, at *2 (D. Kan. Nov. 21, 2014); *Lowe v. Experian*, 328 F. Supp. 2d 1122, 1126 (D. Kan. 2004).

[36] *Chapman Eng'rs,* 766 F. Supp. at 957 (explaining rationale for Model Rule of Professional Conduct 3.7(a) upon which the KRPC 3.7(a) is based).

[37] *Lowe*, 328 F. Supp. 2d at 1126.

[38] *Id.*

[39] *Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, No. 07-2253-DJW, 2009 WL 902424, at *6 (D. Kan. Mar. 31, 2009).

[40] *Id.*

a necessary witness at trial at this stage of the case.[41]  The lawyer-witness rule in KRPC 3.7 only prohibits the lawyer acting as an advocate *at trial*, which is to avoid jury confusion during the trial. Disqualification for pretrial matters, however, may be appropriate where the pretrial activity involves "obtaining evidence which, if admitted at trial, would reveal the attorney's dual role."[42] Plaintiff makes no argument that would justify disqualifying Defendants' counsel for pretrial matters in this case. However, rather than deny Plaintiff's motion as premature, the Court will address the merits of the motion.

The District of Kansas uses the *Smithson* test in determining whether potential testimony is necessary and whether a party's counsel should be disqualified based on KRPC 3.7.[43]  Under the *Smithson* test, a motion for disqualification should not be granted unless: (a) the attorney would give evidence that is material to the issues being litigated, (b) such evidence is unobtainable from other sources, and (c) the testimony would be prejudicial or potentially prejudicial to the testifying attorney's client.[44]  The court will not grant a motion to disqualify unless all three of the *Smithson* factors are met.[45]

---

[41] *See Vanover v. Cook*, No. 98-4166-DES, 1999 WL 689979, at *2 (D. Kan. Aug. 5, 1999) (finding motion to disqualify counsel under KRPC 3.7 premature).

[42] *Am. Plastic Equip.,* 2009 WL 902424, at *6.

[43] *See Schneider*, 2014 WL 6632939, at *2 (citing *LeaseAmerica Corp. v. Stewart*, 19 Kan. App. 2d 740, 751, 876 P.2d 184, 192 (1994)) (adopting *Smithson* factors).

[44] *Walker*, 2019 WL 2268971, at *3.

[45] *Id.*

C.      Analysis of the *Smithson* Factors

1.      Whether the attorney would give evidence that is material to the
        issues being litigated

The first *Smithson* factor is whether the attorney sought to be disqualified would give

evidence material to the issues being litigated. In her motion, Plaintiff argues Mr. Case will be a

material witness at trial "regarding the investigation in which he represented the defendants . . . to

testify about the important contested issues related to [the] consumer fraud investigation."[46] She

also references the Title Replacement Documents and a "title snapshot" that shows an August 5,

2021 "date of application" for the Vehicle ("2021 Title Application Snapshot").[47] Plaintiff also

argues she is entitled to examine Mr. Case regarding emails she sent him and the firm before

litigation began and the content of those emails.[48] The Court groups Plaintiff's arguments

concerning the issues upon which Mr. Case could give testimony at trial into three categories: (1)

Consumer Fraud Investigation and the Title Replacement Documents, (2) 2021 Title Application

Snapshot, and (3) Pre-suit communications with Plaintiff.

Defendants describe Plaintiff's arguments as attempting to fashion a narrative that portrays

Defendants' counsel as "fact witnesses" for trial because Mr. Case assisted the Dealership in

responding to the Investigation Subpoena, performed a pre-suit investigation relating to Plaintiff's

allegations, and engaged in communications with Plaintiff on behalf of Defendants in an effort to

resolve this matter. They emphasize that despite this narrative Plaintiff fails to explain *how* these

matters actually relate to and have any relevance to any of the ten Counts Plaintiff sets out in her

---

[46] Pl.'s Mem. in Supp. of Mot., ECF No. 142-1, at 4.

[47] Ex. 7 to P.'s Mem., ECF No. 142-1, at 44.

[48] Pl.'s Mem., ECF No. 142-1, at 8.

Second Amended Complaint for violations of the Federal Odometer Act, RICO, Magnusson-Moss Warranty Act, MMPA, TILA, FDCPA, FCRA, TILA, FTC Holder Rule, and TCPA.

Before addressing Plaintiff's arguments regarding Mr. Case, the Court notes that Plaintiff's motion does not identify any issues for which co-counsel Ms. Welch would be a potential witness at trial. The Court therefore summarily denies Plaintiff's motion to disqualify based on KRPC 3.7 as it pertains to Ms. Welch.

### i.   Consumer Fraud Investigation and Title Replacement Documents

Plaintiff's main argument why Mr. Case should be considered a material witness is because he has knowledge as it relates to the Dealership's alleged failure to produce the Title Replacement Documents in response to the Investigative Subpoena. Plaintiff argues those documents should have been produced as part of the "dealer's jacket," and she should be allowed to "display to the jury that her Consumer Fraud Action Case with [the] District Attorney was dismissed based upon spoliation of evidence and evidence withheld from the . . . investigation."[49]

The Court finds Plaintiff has not met her initial burden on the first *Smithson* factor. Plaintiff fails to show how any knowledge Mr. Case may have would be material to the claims and issues being litigated in this case. The claims asserted by Plaintiff in her Second Amended Complaint arise from her December 2018 Vehicle purchase, years *before* Mr. Case and the Law Firm began representing Defendants in 2021 in the Consumer Fraud Investigation. Plaintiff has not alleged Mr. Case would be a witness on any issue relevant to the events surrounding her purchase of the Vehicle. Defendants affirmatively state in their response that Mr. Case was not a party to the

---

[49] Pl.'s Mem., ECF No. 142-1, at 12.

December 2018 Vehicle purchase transaction, took no role in the transaction, and has no direct personal knowledge of the transaction.

Plaintiff also suggests Mr. Case would be a witness regarding the Title Replacement Documents, which were prepared and executed after Plaintiff contacted the Dealership in 2019 claiming she had not received the Vehicle's registration paperwork and title. She is correct that the preparation and execution of these documents is likely to be the subject of material testimony in this case. Plaintiff alleges the evidence will show the Dealership forged Mr. Meyer's signature on the Title Replacement Documents. Defendants claim this was simply a clerical error on the forms transposing the first letter of Mr. Meyer's name. However, even if a material disputed issue is being litigated, there is no evidence Mr. Case was involved in the events surrounding the preparation and execution of these documents. In any event, as discussed in Section III.C.2. below, there are other direct sources of evidence or testimony regarding the Title Replacement Documents. The Dealership employees and Mr. Meyer are witnesses who could testify at trial on the issue of whether Mr. Meyer authorized the Dealership to sign them.

With respect to Plaintiff's argument Mr. Case has knowledge as it relates to the Dealership's alleged failure to produce the Title Replacement Documents in response to the 2021 Investigative Subpoena, Plaintiff fails to show how this particular knowledge is material to any claim asserted by Plaintiff. Furthermore, Mr. Case's actions—undertaken in a representative capacity on behalf of the Dealership in responding to the Investigation Subpoena in 2021—do not transform him into a fact witness regarding the actions taken and communications made on behalf of his client. Mr. Case may have assisted his client in responding to the Investigative subpoena, but it was the Dealership, through its employees, who actually would have selected, located, and gathered the documents produced. In addition, Mr. Case could assert attorney-client privilege to protect his communications with his client concerning any legal advice he provided them in

responding to the Investigative Subpoena. Finally, as discussed below, this evidence can be obtained from other non-lawyer witnesses.

> ii.   *2021 Title Application Snapshot*

Plaintiff next suggests that Mr. Case is a material fact witness regarding a title application for the Vehicle purportedly filed in August 2021. Plaintiff relies upon a document called a "Title Snapshot" she claims shows an application for the Vehicle's title was filed on August 5, 2021.

Defendants respond that Plaintiff is merely speculating Mr. Case participated in this alleged title application in August 2021, offering only her unfounded guesswork and no evidence of such participation by counsel. Defendants argue there is no basis to believe that Mr. Case would be a material fact witness on submission of that title application.

The "Title Snapshot" referenced by Plaintiff shows an application for title was filed in August 2021. While it may show an application was filed then, it does not show Mr. Case or any other attorney participated in the filing of that application. Plaintiff further contradicts her argument on this application by stating Mr. Case "had no idea of the August 2021 title . . . and application for title" and his client "never told [him] about an August 2021 title."[50] Plaintiff has not shown Mr. Case has evidence concerning any August 2021 title application for the Vehicle.

> iii.   *Pre-Lawsuit Communications*

Plaintiff also contends Mr. Case is a material fact witness to the pre-suit communications with her. She argues she is entitled to examine Mr. Case at trial regarding emails she sent him and the firm before litigation began and the content of those emails, but does not provide any further explanation how these pre-suit communications would be material to the merits of her pleaded

---

[50] Pl.'s Mem., ECF No. 142-1, at 4.

claims, which stem from her 2018 purchase of the Vehicle, long before Mr. Case was retained by Defendants.

Defendants argue these pre-suit communications in 2021 included settlement discussions and a communication in which Mr. Case requested that Plaintiff cease direct communications with the firm's clients, asking Plaintiff to direct those communications to him instead. They argue such discussions also are not even remotely probative as to the merits of the pleaded claims, and evidence of such discussions would do nothing but confuse the issues and the jury. Defendants also contend Mr. Case is not a proper fact witness regarding other communications in which he was merely serving as a conduit for communications between Plaintiff and any of the Defendants. The proper witness regarding those communications would be the Defendant on whose behalf those communications were made, not its attorney.

Here, the Court finds Plaintiff's pre-suit communications with Mr. Case, including settlement discussions, are not material to the key issues in this case, such as the 2018 Vehicle transaction. Allowing such testimony would not only be irrelevant but could also confuse the issues before the jury. In addition, Plaintiff should not be permitted to turn Mr. Case into a fact witness based merely upon their pre-suit communications such as these as this would encourage the filing of a motion to disqualify counsel in almost every case. Plaintiff has not met her initial burden under the first *Smithson* factor to show Mr. Case would give evidence at trial material to the issues being litigated.

### 2.    Whether the evidence can be obtained elsewhere

The second *Smithson* factor is whether the evidence possessed by the attorney can be obtained from other sources. In other words, Plaintiff must show Mr. Case is the sole source of the evidence in question and it cannot be obtained from other witnesses.

Defendants argue Plaintiff has not met her burden to show the evidence she seeks can only be obtained from the testimony of Mr. Case or Defendants' other counsel. Defendants point out Plaintiff has disclosed 39 individuals and entities as potential witnesses in this case, at least 11 of which are employees or other representatives of the Dealership. Plaintiff does not explain why evidence cannot be properly obtained from the parties, numerous fact witnesses disclosed, or subpoenaed from third parties.

Plaintiff has not argued Mr. Case is the only source of evidence on the preparation of or submission of the Title Replacement Documents, the 2021 Consumer Fraud Investigation, the Dealership's response to the Investigative Subpoena, the 2021 Title Application Snapshot, or her pre-suit communications with Mr. Case. The Court also finds it unlikely Mr. Case (or any other attorney representing Defendants) would be the sole source of information on these matters. The Dealership and its employees and the prior Vehicle owner, Ronald Meyer, would be sources of evidence material to Plaintiff's forgery allegations in the Title Replacement Documents. The Dealership and its employees would be sources of evidence on what documents were produced (or not produced) in response to the Investigative Subpoena and any August 2021 title application, if the Dealership actually filed that application. Plaintiff would be a source on her own communications with Mr. Case.

Plaintiff's motion in this case is notably deficient of any indication she has attempted to depose any Defendant or Dealership employee who may have direct knowledge regarding the Vehicle's Title Replacement Documents or August 2021 title application. Nor does it appear she has deposed Mr. Meyer about those documents and whether he authorized the Dealership to place his signature on them. At the motion hearing held in the State Case, the state court judge denied a similar disqualification motion filed by Plaintiff as premature, finding Plaintiff had not provided anything beyond just allegations and had yet to depose any other witnesses who might have

knowledge about her allegations. When asked by the state court judge, Plaintiff denied she had deposed or even attempted to depose any representative from Kraft Tool Company, such as Mr. Meyer, or any other person who might be able to answer questions about the title documents.[51]  In the year since the State Case motion hearing, there is no indication Plaintiff has deposed or attempted to depose a corporate representative of Defendants or any other non-lawyer witness likely to have knowledge on the issues she raises in her motion to disqualify counsel. Plaintiff has not met her burden to show Mr. Case is the sole source of the evidence in question.

### 3.    Whether the testimony is prejudicial or may be prejudicial to Defendants

The third *Smithson* factor is whether the attorney's testimony is or may be prejudicial to the client. Plaintiff makes no argument regarding this factor. In any event, the Court concludes a finding on this factor is not necessary as Plaintiff has failed to meet her initial burden on the first two *Smithson* factors. Plaintiff's Motion to Disqualify Counsel (ECF No. 142) based upon KRPC 3.7 (lawyer-witness Rule) is denied.

### IV.   Plaintiff's Motion to Disqualify Counsel Based Upon KRPC 1.7 (Conflict-of-Interest Rule) (ECF No. 143)

In her second motion, Plaintiff requests the Court enter an order disqualifying attorneys Case and Welch, and the Law Firm under KRPC 1.7[52] based upon the alleged "simultaneous representation of all the defendants in this case." Plaintiff argues Defendant Santander and the other Defendants have "directly adverse interests and a conflict of interest under Kansas Rule of Professional Conduct 1.7, which prevents the Law Firm and its attorneys from representing the

---

[51] State Case Tr., ECF No. 161-1, 29:25–30:5.

[52] KRPC 1.7 prohibits a lawyer from, in most circumstances, "represent[ing] a client if . . . the representation of one client will be directly adverse to another client."

17

dealership parties and Santander together."[53] Plaintiff describes the four conflicts she contends present a conflict of interest between Santander and the other Defendants, summarized as follows: (1) Alleged inconsistent positions regarding who is the lien holder of the Vehicle;[54] (2) Plaintiff's allegation that a Dealership employee filled out most of her loan application and submitted it to Santander, who financed the Vehicle loan;[55] (3) Recorded telephone conversation between Plaintiff and Santander representative "Denise," who allegedly "placed the blame" on the Dealership;[56] and (4) Santander's return of the loan "contract package" to the Dealership due to missing signatures.[57]

Defendants ask the Court to deny Plaintiff's motion to disqualify their counsel under KRPC 1.7 because she lacks standing to bring her motion since she is not a current or former client of Defendants' counsel, and the public interest exception to the standing requirement is not applicable. Defendants also argue this motion is essentially identical to the one Plaintiff previously filed and the court denied in her State Case. She should not be allowed to take an additional bite out of the same apple, hoping this Court will reach a different result in applying the same state law rules of professional conduct to the same set of alleged circumstances.

Because standing is a threshold issue, the Court first considers whether Plaintiff has standing to bring this motion to disqualify Defendants' counsel based upon a potential conflict

---

[53] Pl.'s Mem., ECF No. 143, at 1.

[54] *Id.* at 5–9.

[55] *Id.* at 9–10.

[56] *Id.* at 10–13.

[57] *Id.* at 13–14.

among their attorneys' clients. "Generally, a party does not have standing to seek disqualification of opposing counsel based on a potential conflict among [counsel's] current clients."[58] Some cases have recognized an exception applies "where the interests of the public are so greatly implicated that a third party should be entitled to raise any apparent conflicts of interest which may tend to undermine the validity of the proceeding."[59] In other words, where the conflict of interest is "such as clearly to call in question the fair or efficient administration of justice," the opposing party can object to the representation.[60]

Plaintiff does not claim she is or was a client of Mr. Case, Ms. Welch, the Law Firm, or any other attorney representing Defendants in this case. Plaintiff has not provided any argument or evidence that would render the public interest exception applicable here. Thus, as a threshold matter, the Court finds Plaintiff lacks standing to seek disqualification of Defendants' counsel based on a potential conflict under KRPC 1.7.

Even if the Court were to find the public interest exception applied here so that Plaintiff could object to Mr. Case or Ms. Welch's representation of all Defendants on the basis of a conflict of interest, the Court finds none of the four vaguely alleged conflicts asserted in Plaintiff's motion would require the disqualification of Defendants' counsel under KRPC 1.7 in this case.[61] The

---

[58] *Lucas v. Dadson Mfg. Corp.*, No. 22-2107-KHV-ADM, 2022 WL 11089242, at *2 (D. Kan. Oct. 19, 2022).

[59] *Id.*; *Hjersted Fam. Ltd. P'ship v. Hallauer*, No. 06-2229-CM-GLR, 2007 WL 2789829, at *4 (D. Kan. Sept. 21, 2007); *Lowe*, 328 F. Supp. 2d at 1129.

[60] *Hjersted*, 2007 WL 2789829, at *4.

[61] The Court notes that the state court judge previously denied a similar motion to disqualify filed by Plaintiff for lack of any evidence demonstrating a conflict of interest, stating she had not heard anything "that would be so diverse that the -- that the clients could not agree to be represented by one counsel." State Case Tr., ECF No. 161-1, 31:4–10.

alleged inconsistencies in the positions of the lienholder of the Vehicle need not be litigated in this case. That a Dealership employee filled out Plaintiff's loan application for financing the Vehicle and Santander was later assigned that loan does not in itself indicate a conflict of interest. That a Santander representative allegedly "placed the blame" for something on the Dealership again does not show a conflict of interest with regard to the forged document alleged here by Plaintiff. Nor does the fact that Santander may have returned the contract package to the Dealership for missing signatures. Plaintiff has not met her initial burden of coming forward with evidence sufficient to establish a prima facie case that a disqualifying conflict exists.[62] None of the alleged conflicts she argues supports a reasonable inference of a violation of the ethical rules.[63] Plaintiff's speculative arguments fall well short of demonstrating any conflict of interest exists.

Since Plaintiff is not a current or former client, the Court reviews her conflicts-based motion to disqualify defense counsel with extreme caution. As noted above, such motions can be "misused as techniques of harassment."[64] Plaintiff's motions to disqualify counsel have now been denied in both her State Case and this case. The motions have accomplished nothing except further delaying and disrupting these proceedings and needlessly increasing the costs of litigation. Plaintiff's Motion to Disqualify Counsel (ECF No. 143) based upon the conflict-of-interest Rule in KRPC 1.7 is denied.

---

[62] *Walker*, 2019 WL 2268971, at *2.

[63] *See Koch*, 798 F. Supp. 1525 at 1530–31 ("The proof must be more than mere speculation and must sustain a reasonable inference of a violation").

[64] *Prince*, 660 F. Supp. 3d at 1092.

**V.    Plaintiff's Motion to Strike (ECF Nos. 147), Motion to Strike Defendants' Pleadings and Request to Impose Sanctions (ECF No. 163), and Motion to Strike Defendants' Written Discovery Due to Conflict of Interest (ECF No. 173)**

Plaintiff has also filed multiple motions to strike Defendants' answers, motions, written discovery requests, and other filings related to and based upon arguments made in her motions to disqualify counsel. Specifically, Plaintiff requests the Court strike the following documents filed by Defendants:

(1) Answers (ECF Nos. 124–131),

(2) Motion requesting entry of a protective order (ECF No. 139),[65]

(3) Designation of comparative fault (ECF No. 149), and

(4) Notice to take the deposition of Plaintiff (ECF No. 151), and

(5) Written discovery requests served on Plaintiff (ECF No. 155).[66]

Plaintiff argues Defendants' answers, motions to dismiss, and comparative fault designation should be stricken pursuant to Rule 12(f) "due to conflict of interest in which the Defendants' joint attorneys of record and attorney's firm improperly utilize the process of filing pleadings with this Court for the purpose of launching scandalous attack [and] as such they are wholly inappropriate in pleadings."[67] Plaintiff also requests Defendants' written discovery be stricken "due to a conflict of interest."[68] Plaintiff has also filed, as part of her motion to strike, a request for sanctions against Defendants and their attorneys based on the same grounds argued in

---

[65] Defendants' Motion for Entry of a Protective Order was granted by the Court at the September 16, 2024 status conference. *See* Order (ECF No. 182) and Protective Order (ECF No. 183).

[66] ECF No. 155 is a Certificate of Service of Defendants' written discovery requests on Plaintiff.

[67] Pl.'s Mot. to Strike, ECF No. 147, at 1-2.

[68] Pl.'s Mot. to Strike, ECF No. 173, at 1.

her motions to disqualify counsel, which she characterizes as "abusing the litigation process and appearing in a case acting as an advocate in a matter in which the lawyer is likely to be a necessary witness."[69]

Plaintiff cites Fed. R. Civ. P.12(f) in support of her motions to strike. That Rule permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[70] Plaintiff has not shown any of the filings she seeks to strike contain "scandalous matter" or any other basis under that Rule for striking them. Plaintiff does not cite any legal support or authority for striking Defendants' pleadings and motions because they were filed by an attorney Plaintiff argues should be disqualified. Even if she had provided binding legal authority on this point, the Court has denied both Plaintiff's motions to disqualify counsel.

Plaintiff requests the Court strike the 24 written discovery requests Defendants served upon Plaintiff on August 30, 2024. Defendants Hellweg, Battaglia, Lewitzke, Turner, Jones, Santander, Soave, and T.E.N. Investments, Inc. each served Plaintiff with a request for admission, request for production of documents, and set of interrogatories. Plaintiff argues these written discovery requests should be stricken "due to a conflict of interest." As explained above, the Court has denied Plaintiff's motion to disqualify counsel based upon KRPC 1.7. Plaintiff's request to strike Defendants' written discovery (served August 30, 2024, as reflected in the certificate of service (ECF No. 155)), is denied. Plaintiff shall serve her responses to these discovery requests **within thirty (30) days of the date of this Memorandum and Order**.

---

[69] Pl.'s Mot. to Strike, ECF No. 163, at 5.

[70] Fed. R. Civ. P. 12(f).

Plaintiff also requests the Notice (ECF No. 151) filed by Defendants to take Plaintiff's deposition be stricken because Defendants' counsel did not meet and confer with her and provide dates for scheduling the deposition before filing it. This part of Plaintiff's motion appears to be moot and is denied. Defendants state in response that the parties have agreed to a replacement deposition date for Plaintiff and Defendants will issue a new deposition notice once the parties resolve the remaining details. Defendants have filed an Amended Notice (ECF No. 187) setting Plaintiff's deposition for October 30, 2024. Plaintiff's motions to strike (ECF Nos. 147, 163, and 173) are denied. Plaintiff's request for sanctions (ECF No. 163) is also denied.

## VI.   Plaintiff's Motion for Order for Court to Accept Audio Recording Exhibits (ECF No. 146)

Plaintiff also filed a motion asking the Court for an order allowing the Clerk to accept "audio recording exhibits" in support of her motions to disqualify. Plaintiff's motion provides no foundational information about the purported audio recordings for the Court to know the identity of the speaker(s), what was being recorded, who made the recordings, and how the recordings are pertinent to her motions to disqualify counsel. Without this information, the Court is unable to determine whether the audio recording exhibits should be filed in the record. Plaintiff's Motion for Order for Court to Accept Audio Recording Exhibits (ECF No. 146) is therefore denied.

## VII.   Plaintiff's Motion for Appointment of Counsel (ECF No. 173).

Plaintiff has also included, as part of her motion to strike (ECF No. 173), a motion for appointment of counsel. Plaintiff requests the Court appoint a lawyer to represent her in this case because her impaired vision impedes her ability to represent herself without friends and family assisting her with her pleadings. She states she is in desperate "need of a court appointed attorney

[because] this case involves hundreds if not thousands of papers and components which requires a more skilled professional to assist Plaintiff."[71]

Unlike a criminal defendant, a plaintiff in a civil case has no constitutional or statutory right to appointed counsel.[72]  However, under the *in forma pauperis* statute, the Court "may request an attorney to represent any person unable to afford counsel."[73]  Plaintiff has not requested permission to proceed *in forma pauperis* in this case or otherwise shown she is "unable to afford counsel," as required by the statute. Further, this Court requires a party requesting the appointment of counsel to show she made diligent efforts to secure an attorney before filing the motion. This District's form motion for appointment of counsel in a civil case requires a movant to list <u>at least five attorneys</u> contacted before filing the motion. Plaintiff has not shown she is unable to afford counsel or that she has made diligent efforts to contact attorneys to secure representation before filing her motion. Plaintiff's Motion for Appointment of Counsel (ECF No. 173) is denied without prejudice.

In summary, Plaintiff has failed to meet the legal standards necessary to disqualify Defendants' counsel under KRPC 3.7 and 1.7. The evidence does not show Mr. Case's testimony is material, nor that any conflict of interest exists. Plaintiff's motions to strike and motion to file audio recording exhibits are unsupported, and there is no legal basis for the appointment of counsel at this time. Accordingly, all of Plaintiff's motions are denied.

---

[71] Pl.'s Mot., ECF No. 173, at 3.

[72] *Castner v. Colo. Springs Cablevision*, 979 F.2d 1417, 1420 (10th Cir. 1992).

[73] 28 U.S.C. § 1915(e)(1).

**IT IS THEREFORE ORDERED** that Plaintiff's Motions to Disqualify Counsel (ECF Nos. 142 to 143) are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike (ECF No. 147), Plaintiff's Motion to Strike Defendants' Pleadings and Request to Impose Sanctions (ECF No. 163), and Plaintiff's Motion to Strike Defendants' Written Discovery Due to Conflict of Interest (ECF No. 173) are **DENIED**. Plaintiff shall serve her responses to Defendants' discovery requests (reflected in ECF No. 155) **within thirty (30) days of the date of this Memorandum and Order**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Order for Court to Accept Audio Recording Exhibits (ECF No. 146) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (ECF No. 173) is **DENIED WITHOUT PREJUDICE.**

IT IS SO ORDERED.

Dated October 16, 2024, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge